IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TOBY BEVILL,<br><br>     Plaintiff,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC.,<br><br>     Defendant. | **No. 4:08-cv-00287-JEG**<br><br>**O R D E R** |

This matter comes before the Court on a Motion for Summary Judgment brought by Defendant Home Depot U.S.A., Inc. (Home Depot), which Plaintiff Toby Bevill (Bevill) resists. The Court held a hearing on the motion on October 30, 2009.  Bevill was represented by attorney Mark Sherinian.  Home Depot was represented by attorney Charles DeWitt, Jr.  The matter is now fully submitted and ready for disposition.

## I.  BACKGROUND

The facts of this case are either not in dispute or are viewed in the light most favorable to Bevill, the nonmoving party.  See Eastling v. BP Prods. N. Am., Inc., 578 F.3d 831, 836 (8th Cir. 2009).  However, while this Court must view the facts in the light most favorable to Bevill, "it is not required to 'accept unreasonable inferences or sheer speculation as fact.'"  Reed v. City of St. Charles, Mo., 561 F.3d 788, 791 (8th Cir. 2009) (quoting Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004)).

Bevill was hired by Home Depot in 2002 and, as of the date of the hearing, continues to work for Home Depot as a department supervisor.  Prior to beginning work for Home Depot, Bevill gained experience as a computer application engineer, an industrial sales representative, a regional sales manager, and as a retail sales associate.[1]

---

[1] In a post-deposition affidavit, Bevill claimed that he gained human resources experience while employed for one year at Struthers-Dunn.  Home Depot argues that this Court should strike Bevill's affidavit pursuant to Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361,

**A. Performance Reviews**

Home Depot periodically assigns employees a performance rating as part of its review process.  When Bevill received performance reviews from 2003 through 2007, Home Depot assigned Bevill an overall performance code ("O" outstanding, "V" achiever, "P" performer, or "I" improvement required), a leadership code ("1" exemplary, "2" effective, "3" acceptable, or "4" deficient), and a potential code ("*" high potential, "+" promotable, "=" grow in position, or "-" placement issue).  In 2008, Home Depot simplified the performance code and included only an overall performance code ("O" top performer, "V" valued associate, or "I" unacceptable performance) and a potential code ("I" promotable or "2" well positioned).

In August 2003, Bevill received a performance rating of "I 4 -".  In December 2003, January 2004, July 2004, and February 2005, Bevill received a performance rating of "P 3 = ".  After February 2005, Rick Hawley (Hawley) became Bevill's supervisor, and in July 2005, January 2006, and July 2006, Hawley assigned Bevill a performance rating of "V 2 +", which indicated that Hawley felt Bevill was promotable.  Bevill's review sheets contained an area where, if an employee was promotable, a supervisor could suggest the employee's next potential position.  In July 2005, however, Hawley did not list a potential position for Bevill; and in January 2006, Hawley listed Bevill's next potential positions as an assistant store manager (ASM) in zero-to-three months and as a human resources manager (HRM) potentially

---

1365-66 (8th Cir. 1983), because Bevill's claim that he gained human resources experience is contrary to his deposition testimony.  However, the Court need not consider whether <u>Camfield</u> would apply because Bevill submitted an unsigned affidavit.  At the hearing on October 30, 2009, Bevill's counsel was made aware that the Court had not received a signed copy of Bevill's affidavit.  Despite this reminder and more than ample time in which to comply, Bevill has failed to provide the Court with a signed affidavit.  The Eighth Circuit held in <u>Mason v. Clark</u>, 920 F.2d 493, 495 (8th Cir. 1990), that "an unsigned affidavit is not sufficient evidence in support of a motion for summary judgment."  As the court noted, "an 'unsigned affidavit' is a contradiction in terms.  By definition an affidavit is a 'sworn statement in writing made . . . under an oath or on affirmation before . . . an authorized officer.'"  <u>Id.</u> (quoting Webster's Third New International Dictionary 35 (1965)).  Therefore, the Court must disregard Bevill's purported affidavit.

immediately.  In July 2006, Hawley only listed ASM in zero-to-six months as Bevill's next potential position.  Then, in April 2007, Hawley lowered Bevill's rating to "P 3 +" and no longer listed any new potential positions for Bevill.  Hawley testified at his deposition that he "still thought [Bevill] had the potential [to be promoted], but it wasn't at this time."  Def. App. 112. Thereafter, Robert Gilbert (Gilbert) became Bevill's manager, and in March 2008, Gilbert rated Bevill as a "V 2" under the new rating system, meaning that Bevill was well positioned but not promotable.

### B.  Management Hiring Process

Home Depot uses a Retail Management Assessment (RMA) process in order to find qualified individuals to fill store management positions.  An employee who wants to become an ASM or an HRM must first be rated "V 2 +" or better and have a supervisor endorse his or her candidacy.  If the employee meets these criteria, then the employee is invited to take the RMA test for the position in which he has an interest, and if he scores at least 70 percent on the test, he is placed in the qualified pool of applicants.  When an ASM or an HRM position becomes available in a store, the store manager contacts the district human resources manager, who in this case was Carol Wisecarver (Wisecarver).  The district human resources manager in turn provides the store manager with a "slate" of eligible candidates from the pool of applicants.  The store manager then selects three candidates to interview and thereafter selects one of the candidates to fulfill the position.

Bevill has sought to be promoted throughout his tenure at Home Depot.  Bevill took and passed the HRM RMA test in October 2004 and the ASM RMA test in December 2005.  After passing the RMA tests, Bevill interviewed for numerous promotions at Home Depot.[2]  Among

---

[2] Between 2004 and October 2007, Bevill interviewed for several positions at various Home Depot stores in Iowa and Minnesota: (1) Des Moines HRM position (2004); (2) West Des Moines HRM position (2005); (3) General Minnesota positions (February 2006); (4) Ankeny HRM position (March 2006); (5) Ankeny ASM position (January 2007); (6) Clinton

the managers who interviewed Bevill for these positions were Bob McLaughlin (McLaughlin), Patrick Ryan (Ryan), and Darrell Horn (Horn) (collectively, the interviewing managers).  The interviewing managers used a structured interview form during the interviews to record both notes about the interview and the interviewee's answers to specific questions.  Despite many opportunities and interviews, Bevill was never promoted.

The interviewing managers all noted that Bevill interviewed poorly and that the individuals ultimately selected for each position were far superior interviewees than Bevill.  Horn testified,  "[y]ou know, [Bevill] had trouble answering the questions that was [sic] asked.  It really just wasn't a good interview."  Def. App. 129.  McLaughlin concurred and stated, "[Bevill] has very poor interviewing skills. . . .  His answers weren't very precise, and he just kind of talked in circles."  Def. App. 141.  Finally, in regard to an April 2006 interview, Ryan noted that Bevill did not follow the "question structure.  He was convoluted.  He was telling me . . . stuff about he [sic] used to work at GE, which had nothing to do with the HR position or the questions that were being answered."  Def. App. 162.  Also, regarding an interview more than one year later, in May 2007, Ryan testified that Bevill's interviewing skills had not improved and that he "[d]id not respond well to the questions.  Did not give specific examples.  Rambling. Not tying his answer at all to the question."  Id.  Further, in each case the interviewing manager stated that the individuals who were ultimately hired for these positions were better qualified than Bevill; the individuals hired for the HRM positions had years of human resources experience, and the individuals hired for the ASM positions had superior management and retail experience.

---

ASM position (January 2007); (7) Cedar Rapids position (January 2007); (8) Des Moines ASM position (April 2007); (9) Urbandale HRM position (April 2007); (10) Ankeny HRM position (April 2007); (11) Urbandale ASM position (May 2007); (12) West Des Moines HRM position (May 2007); and (13) Ankeny hourly HR supervisor position (October 2007).

### C. Discrimination Claims

Bevill alleged that he was not promoted by Home Depot in retaliation for his support of a friend, Luke Partridge (Partridge), who was formerly the HRM at the Ankeny, Iowa, Home Depot store.  Partridge, who suffers from Parkinson's Disease, filed an initial complaint with the Iowa Civil Rights Commission (ICRC) in April 2005.  After receiving right to sue letters from the ICRC and the Equal Employment Opportunity Commission (EEOC), Partridge filed an employment discrimination suit against Home Depot on June 13, 2006, alleging that Home Depot (1) failed to accommodate his disability and (2) retaliated against him and terminated him because of his disability and because he filed an EEOC charge.  One incident in Partridge's claim that is key to Bevill's claim was a July 2005 meeting at which Partridge failed to bring refreshments and awards, which resulted in Partridge being disciplined.  Bevill wrote a letter in connection with the "refreshment incident."  Bevill now asserts that he wrote the letter in support of Partridge and Partridge's fight against alleged discrimination.  However, when deposed in the Partridge case, Bevill testified that he wrote the letter "to Luke thinking I had to protect me" because "there was an inference that maybe I was supposed to have brought food or beverage or something for a store meeting that wasn't going to last very long . . . [and] I thought I was going to be called on the carpet."  Def. App. 54.  Ryan said that he could not recall if Wisecarver had ever told him that Bevill was supporting Partridge in Partridge's discrimination action.

In connection with Partridge's lawsuit, Bevill signed an affidavit supporting Partridge on March 26, 2007, and had his deposition taken on May 18, 2007.  Home Depot did not become aware of Bevill's affidavit until May 18, 2007, when Partridge's counsel (now counsel for Bevill) presented the affidavit to Home Depot.  By May 18, 2007, the promotion decisions for ten of Bevill's opportunities had already been made, and therefore only three hiring decisions – the May 2007 Urbandale ASM position, the May 2007 West Des Moines HRM position, and the

October 2007 Ankeny hourly HR position – could have occurred after Bevill's deposition in Partridge's lawsuit.

At his May 18, 2007, deposition, Bevill explained his belief that Home Depot retaliated against Bevill by not promoting him because of his support for Partridge.  By support, Bevill clarified that he did not treat Partridge differently than anyone else, but he denied any recollection of (1) speaking out about anyone else treating Partridge differently because of his disability, (2) discussing Partridge's EEOC charge with anyone, or (3) hearing a promotion decisionmaker say something derogatory with regard to his support of Partridge.  Bevill admitted that the only evidence he had for his allegation that he was not promoted in retaliation for supporting Partridge was the fact that he was not promoted.

Key to Bevill's claim is whether, and to what degree, Bevill had a conflict with Wisecarver as a result of Bevill's participation in the Partridge case.  Bevill contends that four different hiring managers told him that he was not being promoted because he had a conflict with Wisecarver.  As further discussed below, the specific nature of any conflict between Bevill and Wisecarver is elusive in this record.  Bevill asserts that the conflict between himself and Wisecarver was a result of Bevill's support of Partridge.  For instance, Bevill testified that McLaughlin stated "that the contact and association with Luke Partridge has been discussed and inferred as to the reasoning of why I hadn't been promoted thus far in the Ankeny store and that those inferences were being carried forward."  Def. App. 218.  Bevill also testified, "[a]s I recall, [McLaughlin] stated that I must have some problem with Carol Wisecarver because I hadn't been promoted yet."  Def. App. 219.  Bevill also discussed a conversation with Ryan in which Bevill claims that "[Ryan] – in the form of a question, he asked me had I resolved my conflicts with Carol Wisecarver and that I had [sic] specifically been able to put to bed the reactions that Luke Partridge had brought into my career."  Def. App. 215.  However, Ryan and McLaughlin both deny that they ever told Bevill that he was not being promoted because of an ongoing

conflict with Wisecarver.  Bevill does not attribute any statements directly to Wisecarver, rather just the inferences of Home Depot management that Wisecarver had negative sentiments toward Bevill.  Although Home Depot denies that there was a conflict, it maintains that if there was one, it was a result of Bevill's refusal to disclose who told Bevill certain information relating to Home Depot's interviewing process in 2005 and Wisecarver's knowledge that Bevill lacked confidence in her.

Bevill testified that Wisecarver, not the interviewing managers, was the person who made some of the hiring decisions at the store level.  However, Bevill's conclusion in this regard has no other support in the record.  Ryan testified that Wisecarver did not make the hiring decisions at the store level.  McLaughlin stated, "[t]he final decision is with me."  Def. App. 136.  Horn gave similar testimony when asked whether Wisecarver was involved in the hiring decisions, saying, "[n]o, we make the – we'd go through the interview process, I'd pick the candidates that I want [sic], and from there I'd have to get the dollar amount from my boss, John Hornor, if I wanted to make a job offer."  Def. App. 128.  Wisecarver testified that she did not have any involvement in the hiring process other than providing the list of potential candidates to the store managers when one was requested from her.

Bevill filed a complaint with the ICRC and the EEOC and thereafter received right to sue letters.  Bevill commenced this action in Iowa state court, and subsequently Home Depot removed the case to this Court pursuant to 28 U.S.C. § 1441.  Bevill alleges Home Depot discriminated against him based upon his age in violation of 29 U.S.C. § 621 et seq. and Iowa Code § 216 and that Home Depot retaliated against him in violation of 29 U.S.C. § 621 et seq., 42 U.S.C. § 12101 et seq., and Iowa Code § 216.  Home Depot answered, denying the allegations, and filed this motion for summary judgment on August 3, 2009.  Bevill does not resist the granting of summary judgment as to the age discrimination and age retaliation claims but

suggests there is sufficient evidence in the record for a reasonable jury to find that Home Depot retaliated against him because of his participation in the Partridge case.

## II.    DISCUSSION

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co., 560 F.3d 881, 884 (8th Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." Id. at 252.

"In order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in his favor based on more than 'speculation, conjecture, or fantasy.'" Doe v. Dep't of Vet. Affairs of U.S., 519 F.3d 456, 460 (8th Cir. 2008) (quoting Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003)). The Court recognizes the general principle that "summary judgment is disfavored in employment discrimination cases, as such cases are 'inherently fact-based.'" Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005) (quoting Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003)). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr, 529 F.3d 794, 797 (8th Cir. 2008) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Indeed, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'" <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the Act.[3]  42 U.S.C. § 12203(a).  Bevill can defeat Home Depot's motion for summary judgment in one of two ways.  First, Bevill "may present admissible evidence directly indicating unlawful discrimination."  <u>Humphries v. Pulaski County Special Sch. Dist.</u>, 580 F.3d 688, 692 (8th Cir. 2009) (quoting <u>Fields v. Shelter Mut. Ins. Co.</u>, 520 F.3d 859, 863 (8th Cir. 2008)).  If Bevill is unable to show direct evidence of retaliatory discrimination, then he "may present evidence 'creating an inference of unlawful discrimination under the burden-shifting framework'" that the Supreme Court established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  <u>Id.</u>

**A.  <u>Price Waterhouse</u> Direct Evidence Test**

As a pivotal point of departure on this analysis, the Court must maintain a disciplined focus on the unique nature of the remaining claim – retaliation.  Bevill asserts that sentiments attributed to Wisecarver, as relayed to him by Home Depot management, constitute direct evidence of retaliation.  Wisecarver denies harboring the animosity attributed to her, and the managers deny having relayed Wisecarver's alleged feelings to Bevill.  At this stage, the Court must view "the facts in the light most favorable to the non-moving party," Bevill.  <u>Reed</u>, 561 F.3d at 791.  However, Home Depot argues this does not amount to direct evidence, because whatever conflict existed was unrelated to Bevill's protected activity.  The Court is compelled to reach a similar conclusion.

---

[3] "[C]laims under the ICRA are dealt with by applying the standards relevant to claims under the ADA."  <u>Mitchell v. Iowa Prot. & Advocacy Servs.</u>, 325 F.3d 1011, 1013 (8th Cir. 2003).

"Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." King v. United States, 553 F.3d 1156, 1160 (8th Cir. 2009) (quoting Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1152 (8th Cir. 2007)).  "A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas analysis to get to the jury, regardless of whether his strong evidence is circumstantial." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).  "Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume." Id.  "Price Waterhouse defined the term 'direct evidence' negatively to exclude 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" King v. Hardesty, 517 F.3d 1049, 1058 (8th Cir. 2008) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  Direct evidence "may include 'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' or comments 'uttered by individuals closely involved in employment decisions.'" Id. (quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991)).  If the Court finds that there is direct evidence of retaliation, then "the burden rests with [Home Depot] to show that it more likely than not would have made the same decision without consideration of the illegitimate factor." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005) (citing Price Waterhouse, 490 U.S. at 258).

In determining whether Bevill has presented direct evidence of retaliatory animus, the Court finds helpful the Eighth Circuit's case of Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144 (8th Cir. 2008).  In Van Horn, plaintiff Ashlie Van Horn (Van Horn) claimed that she was retaliated against by Best Buy Stores, L.P., (Best Buy) in violation of Title VII and the ICRA

because she had reported what she believed to be sexual harassment by two Best Buy sales managers, Ed Stald (Stald) and Nathan Mayberry (Mayberry).[4]  Id. at 1147-48.  Best Buy promised to investigate and take appropriate action.  Id. at 1148-49.  Subsequent to Van Horn's complaints, Van Horn alleged that her manager, Jeff Clark (Clark), "would say 'HR' and 'game off' when [Van Horn] entered a room or joined a conversation where other managers or supervisors were present and 'game on' when she left."  Id. at 1150.  Van Horn also presented evidence that Clark told Mayberry about Van Horn's confidential complaint.  Id. at 1149.  Clark fired Van Horn two months after Van Horn complained about Mayberry's conduct.  Id.

While the court in Van Horn noted that Clark's statements "could be interpreted as mocking Ms. Van Horn's focus on rule enforcement," the court found that there was little to connect Clark's mocking to Van Horn's protected conduct.  Id. at 1150.  In analyzing Van Horn's claim, the district court declined to consider the facts under the direct evidence test established in Price Waterhouse and instead considered Van Horn's claim using the McDonnell Douglas burden shifting analysis.  The Eighth Circuit affirmed, concluding that a causal connection between Van Horn's protected conduct and termination was undermined because (1) Van Horn was not fired until eight months after her complaint about Stald and there was no evidence that Clark even knew Stald; (2) Van Horn was not fired until two months after her complaint about Mayberry; (3) the timing of Clark's comments about HR were consistent with Van Horn's general disapproval of Clark and her complaints that Clark ignored store rules by bringing soft drinks onto the sales floor, leaving the store without going through security, and allowing an employee to make a special order under a false name; and (4) there was evidence

---

[4] Van Horn reported that she had asked Stald whether she could wear a skirt to work and that "Stald said that it was all right 'as long as I can see your snatch.'"  Van Horn, 526 F.3d at 1148.  Van Horn also reported to Best Buy that Mayberry "bragg[ed] about having 'hot women' working for him in sales, ma[de] inappropriate comments to employees, offer[ed] to waive a charge for a customer who was a massage therapist in return for her giving him a massage, and show[ed] employees Playboy magazine 'playmates' that he had on his cell phone."  Id. at 1149.

that Clark may not have liked Van Horn because she was promoted more quickly than Clark.  Id.
at 1149-50; see also Carrington v. City of Des Moines, Iowa, 481 F.3d 1046, 1053 (8th Cir.
2007) (concluding that there was no direct evidence of retaliation where employee Carrington's
complaints of discrimination could not be causally connected to Carrington's termination where
evidence only consisted of "Carrington ma[king] at least three complaints of discrimination and
retaliation . . . [which] were all followed by progressive levels of discipline that included two of
the three decision-makers that fired Mr. Carrington").

In support of Bevill's argument that direct evidence of retaliation proves his claim, Bevill
asserts that he "was given direct communications from Mark Friesner, Pat Ryan, Rick Hawley
all at times during and occurring in review indicating that I had a conflict with Carol Wisecarver
based upon my communication, networking with Luke Partridge."  Def. App. 215.  However, in
comparison with the evidence in Van Horn, which did not amount to direct evidence, Bevill's
evidence seems even less compelling.  First, as in Van Horn, inferences would be required to
connect the adverse employment action and the protected activity.  Second, any conflict between
Bevill and Wisecarver was created before Bevill's protected conduct, whereas in Van Horn the
origin of the conflict between Clark and Van Horn was ultimately unclear.  Third, the evidence
in this case shows that Wisecarver continued to give Bevill opportunities to be promoted.
Fourth, although Clark was a decisionmaker at Best Buy with regard to Van Horn's continued
employment, Wisecarver was not a decisionmaker at Home Depot with regard to Bevill's pro-
motions.  Fifth, Home Depot's stated reason for not promoting Bevill was consistent before and
after Bevill's protected activity.

Bevill alleged that Ryan, McLaughlin, Horn, and Hawley all made comments regarding
Bevill's conflict with Wisecarver.  With regard to Ryan, Bevill said, "in the form of a question,
he asked me had I resolved my conflicts with Carol Wisecarver and that had I specifically been
able to put to bed the reactions that Luke Partridge had brought into my career."  Id.  Bevill also

said that Ryan "indicated that I had an outstanding issue with Carol." Id. Bevill gave similar

testimony with regard to McLaughlin, stating,

> McLaughlin referenced a question as to why I had not been promoted and was it
> based upon my interactions with Carol Wisecarver.  He didn't have knowledge
> over what the original conflict was.  That it came before him.  Before he became
> a store manager [at the Ankeny store], he understood that it was mainly occurring
> with the Luke Partridge slash – discussions, but that he knew that that was cause
> for not being considered for other issues [sic] within the company.

Id. at 216.  In addition, McLaughlin allegedly told Bevill, "your conflict with Carol Wisecarver

isn't over." Id. Later, McLaughlin "said that the contact and association with Luke Partridge

had been discussed and inferred as to the reasoning of why I hadn't been promoted thus far in the

Ankeny store and that those interferences were being carried forward." Id. at 218. Bevill also

testified that Horn told Bevill during one of Bevill's interviews that "he was new to the com-

pany, that he was using most of the input from the existing people for the slate of candidates that

was developed and that I might have a conflict with human resources, Carol Wisecarver, specifi-

cally," and that "there may have been an indication from Carol Wisecarver as to a problem, but

he did not want to be specific." Id. at 216. Finally, Bevill testified that Hawley said in a review

that "you have a conflict with Carol Wisecarver that hasn't allowed you to be promoted." Id.

Later, Bevill said that Hawley "stated that I must have some problem with Carol Wisecarver

because I hadn't been promoted yet." Id. at 220.

Bevill has cited to no authority to support the proposition that the statements allegedly

made by Home Depot managers constitute direct evidence of retaliation.  The Price Waterhouse

analysis is appropriate where "a *strong causal link* between the alleged discriminatory bias and

the adverse employment decision" exists. McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d

855, 861 (8th Cir. 2009) (emphasis added).  However, as in Van Horn, Bevill has not shown a

direct link between Bevill's protected conduct and the adverse employment actions, let alone the

*strong causal link* required by Price Waterhouse.  Indeed, Bevill does not even have evidence of

one statement by Wisecarver herself; he merely claims that the managers relayed their own thoughts and inferences as to why Bevill had not been promoted.  At most, Bevill has shown that a conflict between himself and Wisecarver existed prior to his statutorily protected conduct.  However, Bevill has not shown that this conflict was in any way related to his protected conduct, and the sentiments Bevill attributes to Wisecarver are themselves facially neutral with regard to illegal animus.  See Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006) (finding that a facially neutral statement, without more, does not demonstrate the animus necessary to establish direct evidence).  This Court would have to draw inferences from the alleged state-ments made by the managers to come to the conclusion that the adverse employment action was a result of Bevill's protected activity.  McCullough, 559 F.3d at 861 ("[Direct Evidence] most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias."); Cronquist v. City of Minneapolis, 237 F.3d 920, 925 (8th Cir. 2001) (finding no direct evidence where employee plaintiff's evidence in discrimination case "is of the sort that would require a series of inferences to be drawn before a discriminatory attitude could be attributed to those who made the employment decisions [plaintiff] challenges").  The evidence does not clearly show that Wisecarver had a conflict with Bevill because he participated in Partridge's lawsuit, and, therefore, Bevill cannot prove illegal retaliation via Price Waterhouse.  See Griffith, 387 F.3d at 736 ("[I]f the plaintiff lacks evidence that clearly points to the presence of an illegal motive," then he cannot use the direct evidence test to show an employer acted illegally).

Further, even if the Court found that the statements Bevill attributes to the managers were direct evidence of retaliation, Bevill cannot show that the retaliation was based on his protected conduct because the comments were made by the managers before Bevill's protected conduct ever occurred.  See Smith v. Int'l Paper Co., 523 F.3d 845, 848 n.2 (8th Cir. 2008) ("In the direct evidence context, the plaintiff must show the existence of an illegitimate motive, retaliation on account of protected conduct.") (citing Cram v. Lamson & Sessions Co., 49 F.3d 466, 472 (8th

Cir. 1995)).  As noted in the Court's application of <u>McDonnell Douglas</u>, Bevill's protected

activity status did not begin until May 18, 2007.[5]  In <u>Van Horn</u>, the offending statements were

made *after* the plaintiff's protected activity.  <u>Van Horn</u>, 526 F.3d at 1150.  Here, the managers'

statements relating to Bevill's conflict with Wisecarver were made *before* Bevill's protected

activity on May 18, 2007.  This timing discrepancy further undercuts any possible causal

connection.  For example, Bevill testified that Ryan made the statements "[prior] to him leaving

the store in Ankeny," in June 2006.  Def. App. 149, 215.  The conflict McLaughlin mentioned

must also have started before May 18, 2007, because McLaughlin said that he learned of the

conflict before he became the store manager, which also occurred in 2006.[6]  Next, Bevill testified

that Horn told him during one of Bevill's interviews that Bevill's conflict with Wisecarver was

preventing him from being promoted.  Because Bevill's last interview with Horn took place on

April 14, 2007, the conflict referred to could not have spawned from Bevill's protected activity.

Finally, Bevill indicated that Hawley made statements to him during a performance review.

Since Bevill's most recent review with Hawley took place on April 4, 2007,[7] Hawley's alleged

comments also occurred before Bevill's protected activity, and any referred to conflict between

Bevill and Wisecarver could not have resulted from Bevill's protected activity.  Accordingly,

none of the statements that Bevill attributes to Home Depot management constitute direct

evidence of unlawful retaliation.[8]

---

[5] <u>See</u> <u>infra</u> p. 25.

[6] Although Bevill claims in his unsigned affidavit that the conversation with McLaughlin took place in 2008, as noted earlier, the Court must disregard Bevill's affidavit because a signed copy of the affidavit was never provided to this Court.  <u>See</u> <u>supra</u> note 1.  Regardless, even if the conversation took place in 2008, the fact remains that McLaughlin learned of the "conflict" in 2006 before Bevill's protected activity took place.

[7] Again, the Court disregards the unsigned affidavit and relies on Bevill's testimony under oath at the deposition.  Def. App. 29, 191.

[8] The record suggests a conflict between Bevill and Wisecarver may have existed simply because of Wisecarver's duties as district human resources manager and unrelated to Bevill's

Additionally, whether or not Wisecarver had a conflict with Bevill, Wisecarver neverthe-less gave Bevill every opportunity to be promoted, which further contradicts any argument that Wisecarver sought to keep Bevill from advancing.  Wisecarver's role in the interview process was to compile the list of candidates; Wisecarver did not conduct the interviews or select the candidates to be hired.  Although Wisecarver could have excluded Bevill from the slate of candidates that she provided to store managers, Wisecarver always included Bevill on each candidate list for which Bevill was qualified.  In fact, Wisecarver even included Bevill on candidate lists after Bevill's HRM RMA score had expired, meaning that Bevill was no longer technically qualified for a promotion.  In addition, Bevill admitted that Wisecarver never told Bevill that she had a problem with him and never said anything about the Partridge case to Bevill nor did Bevill ever confront Wisecarver about the alleged conflict between them.

Also, the sentiments attributed to Wisecarver do not constitute direct evidence of retalia-tion because Wisecarver was a not a decisionmaker.  See King, 553 F.3d at 1161.  Bevill attempted to connect Wisecarver's alleged feelings to the decisions hiring managers at Home Depot made to not promote him.  However, Wisecarver had no role in denying Bevill the pro-motions in question.[9]  Horn, McLaughlin, and Ryan all stated that they were the ones who made the promotion decisions and that Wisecarver neither expressed an opinion about Bevill nor instructed the managers who to promote.  Bevill admitted that he does not know who made the

---

participation in Partridge's lawsuit.  Nonetheless, because the record does not support that whatever conflict existed between Bevill and Wisecarver resulted from Bevill's protected activity, the Court need not resolve the exact origin of a conflict or even determine whether a conflict actually existed.

[9] Only the promotion decisions made within three hundred days of Bevill's complaint of discrimination are considered under the ADA.  See 42 U.S.C. § 2000e-5(e)(1) ("[S]uch charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.").  Therefore, Bevill's possible claims are limited to those promotion decisions that took place in January 2007 or later due to the fact that Bevill filed his claim with the state on October 29, 2007.

hiring decisions at issue in this case.  Because the evidence provided to this Court shows that Wisecarver was not a decisionmaker, any feelings attributed to Wisecarver cannot constitute direct evidence of retaliation.  See King. 517 F.3d at 1059 (finding no direct evidence of discrimination in situations where the individual alleged to have made discriminatory comments was not a decisionmaker); Shaffer v. Potter, 499 F.3d 900, 904 (8th Cir. 2007) (noting that there was no direct evidence of discrimination where it was "undisputed" that the individual who made allegedly discriminatory statements was not the decisionmaker); Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) (finding that supervisor's statements that employee "should 'quit' because he was 'old and worn out'" was not direct evidence of discrimination because the supervisor was not involved in the employee's termination); Yates v. Douglas, 255 F.3d 546, 549 (8th Cir. 2001) (holding that an individual, nondecisionmaker accused of making racially discriminatory statements "was not sufficiently involved in the employment decision to qualify his comments as direct evidence of discrimination").

Finally, Bevill's claim that Wisecarver prevented Bevill from being promoted because of his protected activity is actually contradicted in this record by the fact that Bevill consistently interviewed poorly throughout his tenure at Home Depot.  Bevill admitted that he had been told by Pat Ryan in 2004 that Bevill needed to seek help and improve his interviewing skills.  Specifically, Bevill said that Ryan "gave me direction to talk with the local human resources manager."  Def. App. 211.  Home Depot managers also stated that Bevill was not promoted because he was not as qualified as other candidates for the available positions.  Bevill acknowledged his need to become more qualified in October 2007 when Bevill worked with Home Depot management to create a development plan for himself.  When McLaughlin asked Bevill what he was going to do to improve his credentials, Bevill stated, "I offered that I was going to do – rather than scheduled course work, I was going to be involved with something

through one of the local attorney firms."[10]  Def. App. 213.  Bevill concluded that "we left it that I would use open-ended or osmosis discussion *to get the HR background that I needed to be promoted* at Home Depot."  Id. (emphasis added).  Bevill's admission that he had been told that he needed help with his interviewing skills three years before his protected activity and acknowledgement that he was not as well trained as he needed to be in order to get promoted after being denied the promotions in question also weighs against any finding that Bevill was denied a promotion in retaliation for his protected activity.

In sum, Bevill does not have evidence of "a specific link between the alleged discriminatory animus and the challenged decision," and therefore the Court proceeds to analyze his claim pursuant to McDonnell Douglas.  See King, 553 F.3d at 1160.

## B. McDonnell Douglas Test

"Without direct evidence of a retaliatory motive, [the Court] analyze[s] retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of McDonnell Douglas."  Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007).  Under McDonnell Douglas, "[t]o prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protect activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events."  Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 (8th Cir. 2006); Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006).  If the plaintiff successfully establishes a prima facie case of discrimination, then the burden shifts to the defendant to show a legitimate, nondiscriminatory explanation for the adverse employment decision.  Mershon, 442 F.3d at 1074.  If the defendant provides a legitimate nondiscriminatory reason for the employment decision, then "the burden of production shifts back to the plaintiff to show that the defendant's reason is a pretext

---

[10] Bevill sought this additional training from the attorney representing him in this case.

for discrimination." Id. (quoting Amir v. St. Louis Univ., 184 F.3d 1017, 1026 (8th Cir. 1999)). Once again, the Court must confine the analysis to a claim of retaliation.  Under McDonnell Douglas, "[T]o make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative – not merely a motivating – factor' in the employer's adverse employment decision." Van Horn, 526 F.3d at 1148 (quoting Carrington, 481 F.3d at 1053).

      **1.  Prima Facie Case**
        **a.  Protected Activity**

     Protected activity under the ADA includes opposing an act or practice made unlawful by the ADA or testifying, assisting, or participating in an investigation, proceeding, or a hearing under the ADA.  42 U.S.C. § 12203(a).  "An employee engages in protected activity when [he] opposes an action 'based on a reasonable belief that [his] employer has engaged in discrim-inatory conduct.'" Foster v. Time Warner Ent. Co., L.P., 250 F.3d 1189, 1194 (8th Cir. 2001) (quoting E.E.O.C. v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998)).  "A finding of unlawful retaliation, however, is not conditioned on the merits of the underlying discrimination com-plaint." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000).  As such, under Eighth Circuit precedent, the reading of the statute is not literal, and Bevill "need not establish the conduct which [he] opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." Id. Viewing the facts in the light most favorable to the nonmoving party, the Court assumes, for purposes of summary judgment, that Bevill reasonably believed in good faith that Home Depot was discriminating against Partridge in violation of the ADA.  Therefore, Bevill "must show that [Home Depot] had actual or constructive knowledge of [a] protected activity in order to establish unlawful retaliation." Hervey v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008).

     Bevill contends that his protected conduct began with a letter that he wrote "in support" of Partridge on August 3, 2005.  Bevill asserts that both Ryan and Wisecarver were aware of this

letter at the time he wrote it in 2005.  Further, Bevill asserts that Wisecarver knew of and advised

Ryan on the belief that Bevill was supporting Partridge's claim against Home Depot.  Bevill

distinguishes Van Orden v. Wells Fargo Home Mortgage, Inc., 443 F. Supp. 2d 1051, 1064 (S.D.

Iowa 2006), wherein this Court found that defendant employer Wells Fargo was entitled to

summary judgment on a Title VII retaliatory discrimination claim because inter alia Wells Fargo

was not aware of the alleged opposition to unlawful discrimination.  Bevill argues that in the

present case, Home Depot *was* aware of Bevill's "support" of Partridge's claim prior to 2007

through unspecified "internal additional complaints," and therefore his conduct beginning as

early as 2005 constitutes protected activity.

Home Depot counters that Bevill's testimony in the Partridge case on May 18, 2007, was

the first protected activity Bevill engaged in because Bevill's August 3, 2005, letter was not

written in opposition to discrimination in the workplace, nor was it written as participation in a

proceeding and therefore did not constitute protected activity under the ADA.  The letter,

addressed to Partridge, stated,

> In review of planning for the store meeting of last weekend, the subject of food,
> refreshments of any nature was not decided due to the shortness of the meeting.
> It was not brought up after the voting of last badges to my recollection either.
> The meeting started so late (7:30) and was over by 8:00.  Any food would have
> been eaten like a quick break anyway.

Def. App. 47.  When questioned about the nature of the letter at his deposition in the Partridge

case, the following exchange between Home Depot's counsel and Bevill occurred:

Q.  And what is this?

A.  This was a statement that I wrote when Pat Ryan, store manager, was trying
to find out who was responsible for bringing food to a store meeting.  And I
wrote it because I thought we'd never talked about any of that in staff and that
there was an inference that maybe I was supposed to have brought food or
beverage or something for a store meeting that wasn't going to last very long.
In fact, I thought I was going to be called on the carpet for doing something
when I thought I had some notes indicating nothing was done about [sic].

. . .

Q.  And did Luke Partridge ask you to write this statement marked as Exhibit 57?

A.  No.  I wrote it – I wrote it to Luke thinking I had to protect me.

Def. App. 53-54.  The August 3, 2005, letter does not reference discrimination.  Even if Bevill mis-spoke at the deposition when he said that he wrote the letter in order to protect himself and had intended the letter to be in support of Partridge, the letter also fails to constitute protected activity because, as this Court noted in Van Orden, "the employee's opposition to the employer's conduct must be expressed in a manner that connects it to an [unlawful] employment practice." Van Orden, 443 F. Supp. 2d at 1062.  Because the August 2005 letter cannot be construed as opposing discrimination, it does not constitute protected activity.

At Bevill's deposition in support of Partridge on May 18, 2007, Bevill discussed his support of Partridge and his belief that he had been retaliated against because of that support. With regard to what he meant by his support prior to May 18, 2007, Bevill stated, "I didn't see any physical limitations in [Partridge].  And when it was brought to my attention that he had an affliction, I reached out to him because my sister has an affliction."  Def. App. 58.  When asked whether he had ever spoken out against someone who he felt had discriminated against Partridge, Bevill said that he could not recall having done so.  Finally, when asked how the company would have known of his support for Partridge, Bevill said, "[t]hey would have generally seen me with [Partridge] during work issue times.  They might have drawn conclusions based on things that we were doing and planning together.  They would have also seen me at Kaaboom functions with [Partridge]."  Id.

In Van Orden, this Court considered plaintiff employee Van Orden's claim that she was retaliated against after engaging in protected activity in support of two African-American employees, Goods and Jones, against what Van Orden believed was racially discriminatory treatment by a superior, Wettach.  Van Orden, 443 F. Supp. 2d at 1063.  Van Orden claimed that

she supported Jones by counseling her and by giving Jones a fair performance review when Wettach wanted a more critical review.  Id.  Van Orden asserted that she supported Goods by telling "Wettach she wanted to make sure Wettach treated Goods fairly because she had not done so previously, which agitated Wettach."  Id.  In rejecting these actions as sufficient to constitute protected activity, the Court noted that "[n]ot every complaint garners its author protection under Title VII."  Id. (citing Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006)).  The complaints by Van Orden were not protected activity because Van Orden failed to allege unlawful discrimination.  Id.  But cf. Green, 459 F.3d at 914 (finding protected activity where employee told immediate supervisor and company CEO about instances of alleged racial harassment toward her by other nonsupervisory co-workers and thereafter filed a formal complaint about the alleged racial harassment).

     If Van Orden can be distinguished at all, the exercise would not be favorable to Bevill. Viewing the facts in the light most favorable to Bevill, the Court finds that the facts show Home Depot management was aware that Bevill was a friend of Partridge and that Bevill treated Partridge just like any other employee.  Bevill's testimony confirms that Bevill never complained to anyone at Home Depot that Partridge was being discriminated against and never complained that the company was not meeting its statutory requirements to accommodate Partridge and his disability.  Because Bevill failed to complain or bring to Home Depot's attention the claim that Partridge was being discriminated against in violation of the ADA, Bevill's actions cannot be considered protected activity.  See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005) (finding that claimant's failure to attribute the lack of African-American district mangers to racial discrimination did not constitute protected activity); Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002) ("The protected activity in [plaintiff's] retaliation claim would fall generally within the opposition clause, but [plaintiff] failed to

present sufficient evidence that she opposed an unlawful employment practice prior to her termination.").

Bevill also argues that Wisecarver and Ryan were aware of the discrimination complaint Partridge filed with the ICRC on April 12, 2005.  To the degree that Bevill argues that he was retaliated against because of his friendship with Partridge, that argument also fails because friendship with an individual embroiled in discrimination litigation, without more, does not constitute protected activity.  See Smith v. Riceland Foods, Inc., 151 F.3d 813 (8th Cir. 1998) (noting that because Title VII already offered protection to employees who did assist or partici-pate in any manner, "a plaintiff bringing a retaliation claim . . . must establish that [he] personally engaged in the protected conduct"); Thompson v. N. Am. Stainless, LP, 567 F.3d 804, 816 (6th Cir. 2009) (en banc) (rejecting the argument that a third-party relative or friend may bring a retaliation claim where that relative or friend has not engaged in protected activity); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 568 (3d Cir. 2002) (noting that "[t]he plain text of the anti-retaliation provisions requires that the person retaliated against also be the person who engaged in the protected activity," and "[r]ead literally, the statutes are unambiguous – indeed, it is hard to imagine a clearer way of specifying that the individual who was discriminated against must also be the individual who engaged in protected activity"); Holt v. JTM Indus., Inc., 89 F.3d 1224, 1227 (5th Cir. 1996) (finding that because in "most cases, the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination," it was unnecessary to allow a third party who had not participated in the original claim to bring a retaliation claim against employer).

Although neither the letter Bevill wrote to Partridge in 2005 nor Bevill's friendship with and personal support of Partridge constituted protected activity, Bevill did sign an affidavit in support of Partridge's charge of discrimination on March 26, 2007, and Bevill was deposed for Partridge's case on May 18, 2007.  In both the affidavit and at the deposition, Bevill mentioned

specific instances in which he believed Partridge had been discriminated against because of his disability and supported Partridge's ability to complete his job functions. Bevill's act of signing the affidavit and testifying clearly fall within the contours of protected activity contemplated by the ADA. See 42 U.S.C. § 12203(a); Foster, 250 F.3d at 1194.

### b. Adverse Employment Action

Next, Bevill must show that Home Depot committed an adverse employment action. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). An adverse employment action is one "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Vajdl v. Mesabi Acad. of KidsPeace, Inc., 484 F.3d 546, 552 (8th Cir. 2007) (quoting Burlington N., 548 U.S. at 68). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington N., 548 U.S. at 68.

Here, Bevill argues that his failure to be promoted is an actionable adverse employment action because the possibility of being denied a promotion would dissuade others in a similar position as Bevill from opposing discrimination. Home Depot seems to concede that a failure to promote, at least in this context, would constitute an adverse employment action. Here, if Bevill actually had been denied a promotion because of his affidavit and deposition testimony, a reasonable employee in a similar situation would be dissuaded from opposing discrimination. Therefore Bevill has shown an adverse action. See id. (noting that the standard to be applied is an objective one, and that a court should consider the "reactions of a *reasonable* employee").

24

### c.   Causal Connection

Finally, in order to show a prima facie case of retaliation, Bevill must establish a causal link between his protected activity and Home Depot's adverse employment actions.  Green, 459 F.3d at 914.  As an initial matter, Home Depot did not become aware of Bevill's March 26, 2007, affidavit until it was produced to Home Depot's counsel on May 18, 2007.  Therefore, because Home Depot did not become aware of Bevill's protected activity on March 26, a causal connection does not exist between the promotion decisions and Bevill's protected activity between March 26, 2007, and May 18, 2007.  Jackson v. United Parcel Serv., Inc., 548 F.3d 1137, 1143 (8th Cir. 2008) ("[A] causal link does not exist if the employer is not aware of the employee's statutorily protected activity" (quoting Wolff v. Berkley Inc., 938 F.2d 100, 103 (8th Cir. 1991))); Stewart, 481 F.3d at 1044 ("[A]lleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event."); Buettner, 216 F.3d at 715 ("A plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation.").  Bevill argues that a causal link exists because of the temporal proximity between Bevill's protected activity and Home Depot's adverse employment action.  Bevill also argues, as he did with regard to direct evidence, that causation is established by the statements attributed to Ryan, Horn, McLaughlin, and Hawley.

First, Bevill relies on the temporal proximity between his protected activity and the adverse employment actions to establish causation.  "An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation."  Carrington, 481 F.3d at 1052 (quoting Arraleh v. County of Ramsey, 461 F.3d 967, 977 (8th Cir. 2006)).  The Eighth Circuit has "made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory

25

discharge." <u>Thompson v. Bi-State Dev. Agency</u>, 463 F.3d 821, 826 (8th Cir. 2006) (quoting

<u>Kipp v. Mo. Highway & Transp. Comm'n</u>, 280 F.3d 893, 897 (8th Cir. 2002)).

There are three possible instances in which Bevill was not selected for a promotion after

Home Depot became aware of his protected activity: (1) the May 2007 ASM position, (2) the

May 2007 HRM position, and (3) the October 2007 hourly HR position.  The timing between the

two promotion decisions in May and Bevill's protected activity is extremely close.  Although in

general more than a temporal connection is needed, where timing is extremely close, such as

here, it *may* be enough to establish a prima facie case because "the threshold of proof necessary

to establish a prima facie case is minimal."  <u>Logan v. Liberty Healthcare Corp.</u>, 416 F.3d 877,

881 (8th Cir. 2005) (quoting <u>Young v. Warner-Jenkinson Co., Inc.</u>, 152 F.3d 1018, 1022 (8th

Cir. 1998)).

However, the temporal proximity between the two promotion decisions in May and

Bevill's protected activity is undercut by the fact that Bevill was denied promotions several

times before his protected activity took place.  In his March 2007 affidavit in the Partridge case,

Bevill stated, "I have applied for fifty (50) different positions within the company and at the

different stores in the Des Moines area, but have not been promoted for any or them."  Def. App.

45.  At Bevill's May 2007 deposition in support of Partridge, Bevill was asked what the basis of

his belief was for his conclusion that Home Depot denied him promotions because of his support

for Partridge.  Bevill responded, "I believe that local management drew conclusions that if there

were statements that were made that it would not have been inconsistent with what my abilities

are."  Def. App. 59.  When asked what he actually meant by his ambiguous response, Bevill

stated as follows:

> A.  I don't have specifics.  I would just indicate that the water in the areas for the
> applications that I made appear to have been poisoned.
>
> Q.  And what gave you that impression?

A.  I wasn't promoted.

Q.  Anything else, other than the fact that you weren't promoted that you felt the water in the areas of the applications you submitted had been poisoned?

A.  No.

Id.  The fact that Bevill was again denied promotions shortly after his protected activity took place is nothing more than a "mere coincidence of timing" and does not provide the necessary causal link between the promotion decisions and the protected activity.  Thompson, 463 F.3d at 326.

As to the hiring decision made in October 2007, nearly five months had passed since Bevill's protected activity.  The Eighth Circuit has established that "[a] gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive."  Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 633 (8th Cir. 2005).  In this case, a period of five months passed between Bevill's protected activity and the October 2007 promotion decision, making any temporal link between the protected activity and adverse action too attenuated to establish causation based upon a temporal connection alone.  Stewart, 481 F.3d at 1044 (finding that the passage six months between a protected activity and adverse action "preclude[s] a finding of causation or, at a minimum, weigh[s] heavily against such a finding"); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) ("Standing alone, a four-month gap 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'" (quoting Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997))).

Bevill also argues that causation is established by the statements he attributes to Ryan, Horn, McLaughlin, and Hawley in which they allegedly told Bevill that his conflict with Wisecarver was preventing him from being promoted.  However, as this Court previously concluded, the statements that Bevill attributes to the managers predated Bevill's protected

27

conduct, and therefore whatever conflict existed between Bevill and Wisecarver was unrelated to Bevill's participation in the Partridge matter.

Further, any possible causal connection is undercut by Home Depot's uncontradicted evidence that Wisecarver had the ability to preclude Bevill from interviewing for promotions by omitting Bevill's name from hiring slates, yet each time a position was available, Wisecarver included Bevill on the list of potential candidates. Wisecarver also would have been justified in precluding Bevill from any consideration for an HRM position during the relevant time period because Bevill's HRM RMA had expired in October 2006, yet Wisecarver allowed Bevill to continue to be considered for promotions. Furthermore, Bevill himself admitted that Wisecarver never said that she had a problem with him and never mentioned anything about the Partridge case to him. Finally, by Bevill's own count, he had applied and been denied for a promotion *fifty times* prior to engaging in a protected activity. Contrary to Bevill's assertions, nothing in the record indicates that Home Depot decided to not promote Bevill three times after his protected activity for any other reason than Home Depot decided to not promote Bevill fifty times before his protected activity. Because Bevill failed to establish a causal connection that shows his protected activity was a determinative factor in his failure to be promoted, Bevill has not established a prima facie case of retaliation under the ADA.

### 2. Home Depot's Legitimate Nondiscriminatory Reasons and Bevill's Claims of Pretext

Assuming, *arguendo*, Bevill had articulated a prima facie case, the burden would then shift to Home Depot to provide a legitimate, nondiscriminatory reason for its actions. <u>King</u>, 553 F.3d at 1162 ("Under the <u>McDonnell Douglas</u> burden-shifting framework, once a plaintiff establishes a prima facie case of discrimination, the 'burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason' for its employment action." (quoting <u>Twymon</u>, 462 F.3d at 934)). "'[T]he defendant must clearly set forth, through the introduction

of admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (emphasis in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)).  The burden on Home Depot is "one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  If an employer is successful in showing a legitimate, nondiscriminatory reason for its decision, "[t]he burden then shifts back to the plaintiff to 'demonstrate by a preponderance of the evidence that the stated non-discrim-inatory rationale was a mere pretext for discrimination.'" King, 553 F.3d at 1162 (quoting Twymon, 462 F.3d at 934).  "A reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Dixon v. Pulaski County Special Sch. Dist., 578 F.3d 862, 872 (8th Cir. 2009) (quotations and citations omitted).  "In considering the pretext issue, '[the Court's] inquiry is limited to whether the employer gave an honest explanation of its behavior,' not whether its action was wise, fair, or correct." McKay v. U.S. Dep't of Transp., 340 F.3d 695, 700 (8th Cir. 2003) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994)).

Home Depot provided two reasons for not promoting Bevill.  First, Home Depot proffers that Bevill was an extremely poor interviewee and that each time Bevill was denied a promotion, the chosen candidate interviewed better than Bevill.  In McKay v. U.S. Department of Trans-portation, 340 F.3d at 699, the court considered Donald McKay's (McKay) age discrimination claim against his employer, the Department of Transportation (DOT).  In response to McKay's claim, the DOT produced evidence that Janice Orr (Orr), another candidate, was selected over McKay because Orr demonstrated "superior communication skills evidenced in an interview process in which all three applicants were treated equally." Id. at 700.  The court found that, in part, because no probative evidence showed that the interview process was a sham, "McKay

failed to introduce evidence creating a genuine issue whether this nondiscriminatory reason was pretextual."  Id.

As in McKay, there is no indication that the interview process in the present case was a sham.  Every manager deposed testified that Bevill interviewed poorly, that he had difficulty articulating his answers, and that the candidate chosen for each position interviewed better than Bevill.  For example, McLaughlin noted that "[Bevill] didn't interview very well at all in the interviews I had.  I mean, that's – that was a big part of his not getting promoted, also."  Def. App. 141.  Further, like the interview process in McKay, here all applicants were treated equally. Home Depot used a "Placement Interview Tool," which provided interviewers a set of questions to ask each candidate and a consistent method for evaluating each candidate.  As Horn stated at his deposition, "we asked each candidate the same set of questions . . . [Bevill's answers] demonstrated to me that, you know, he – it wasn't that he didn't know what we were asking as a question, just simply that, you know, he wasn't able to relate it to some experience that he had."  Def. App. 129-30.  In fact, Bevill admitted knowing that he had this deficit and was told by Home Depot managers that he needed to get help and improve his interviewing skills if he wanted to be promoted.

Bevill opines that the fact that all of the managers noted that Bevill was a poor interviewee is evidence of pretext.  However, the Eighth Circuit has held that evidence of an *inconsistent* story, not evidence of a *consistent* story, is evidence of pretext.  McCullough, 559 F.3d at 863 ("Pretext may be shown with evidence that 'the employer's reason for the termination has changed substantially over time.'" (quoting Loeb v. Best Buy Co., Inc., 537 F.3d 867, 873 (8th Cir. 2008))).  Here, the fact that every manager concurred that Bevill was not promotable because of his poor interviewing skills weighs strongly against a finding by this Court that Home Depot's stated reason for not promoting Bevill was merely pretextual.

30

Bevill also claims that, unlike in <u>McKay</u>, the interview process in this case was merely a sham and was a pretext for Home Depot's retaliatory discrimination.  Bevill testified that two Home Depot employees, B.J. Lansing (Lansing) and Nancy Duitscher (Duitscher), told him that the individual chosen for the July 2005 West Des Moines HRM position was pre-selected. Home Depot denies that the interviews were a sham and notes that Bevill can only use admissible evidence to defeat summary judgment.  The statements of Lansing and Duitscher upon which Bevill relies in arguing that the interviews were a sham are hearsay because they consist of statements other than ones made by Bevill that have been offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Because hearsay testimony would be inadmissible at trial, it cannot be used at the summary judgment stage.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Anda v. Wickes Furniture Co., Inc.</u>, 517 F.3d 526, 533-34 (8th Cir. 2008) (holding inadmissible testimony by employee plaintiff that employees at another store location had informed plaintiff that their managers had informed them about a rule, the existence of which was material to plaintiff's sexual harassment claim); <u>Cherry v. Ritenour Sch. Dist.</u>, 361 F.3d 474, 480 (8th Cir. 2004) (holding that statements that are inadmissible hearsay cannot be used to defeat summary judgment).

Bevill also argues that the interviews were a sham because Home Depot allowed him to interview for promotions after his RMA scores had expired.  Bevill relies on <u>Nichols v. Ashland Hosp. Corp.</u>, 251 F.3d 496 (4th Cir. 2001), for the proposition that inconsistent implementation of company policies can be evidence of pretext.  In <u>Ashland</u>, the Fourth Circuit affirmed the denial of defendant employer Ashland's motion for a new trial after a jury awarded plaintiff employee Nichols damages on her Family Medical Leave Act (FMLA) claim.  <u>Id.</u> at 499.  In determining whether the record supported the jury's decision, the court noted that the "record establishes that no written complaints about Nichols were documented in her personnel file until the day before she was fired, despite Ashland's policy that complaints about employees should

be recorded contemporaneously." Id. at 502.  The Fourth Circuit reasoned that "[t]he jury could have concluded that the last-minute documentation of Nichols' job performance supports the inference that [Ashland] contrived Nichols' alleged performance deficiencies, after learning of her request for sick leave, in order to create the appearance of a nondiscriminatory reason for Nichols' termination." Id. at 502-03.  The court concluded that "[b]ecause we cannot say that there is an absolute absence of evidence supporting the jury's verdict, we affirm the district court's denial of Ashland's motion for a new trial." Id. at 503.

As previously discussed, Home Depot applicants have a two-year time window in which they will be considered for promotion after passing the RMA.  In this case, Bevill's HRM RMA expired in October 2006, and his ASM RMA expired in December 2007.  Ironically, Bevill argues the fact that Home Depot allowed him to interview for HRM positions after October 2006, as opposed to simply denying him promotion opportunities altogether, is proof of pretext for Home Depot's alleged decision to retaliate against Bevill.  However, on this record, Home Depot had a basis upon which to not allow Bevill to interview at all by relying on the expiration of Bevill's RMA score; and, the record is inconsistent with the argument this was a later-contrived means to mask improper intentions.  In short, Nichols is distinguishable.  This is not a case where Home Depot began documenting performance deficiencies after Bevill engaged in his protected activity so as to manufacture an excuse for not promoting Bevill.  Home Depot's practice of allowing Bevill to interview for promotions, which was technically outside Home Depot's stated policy, occurred numerous times between the expiration of Bevill's HRM RMA score in October 2006 and his protected activity in May 2007.  To the degree that Home Depot did not follow its hiring policies, it did not do so to Bevill's benefit and cannot be construed as a pretext for retaliating against Bevill.

Home Depot also argues that Bevill's relative lack of HRM and ASM qualifications, when compared to other candidates, is another legitimate, nondiscriminatory reason for not promoting

him.  In <u>Gilbert v. Des Moines Area Community College</u>, 495 F.3d 906, 911-13 (8th Cir. 2007),

Fred Gilbert (Gilbert) sued Des Moines Area Community College (DMACC), alleging that

DMACC (1) racially discriminated against him when it did not promote him to the position of

president of the college and that DMACC (2) retaliated against him by later demoting him from

his position as provost.  After Gilbert successfully asserted a prima facie case of discrimination,

DMACC argued that it was legitimate and nondiscriminatory for DMACC not to interview

Gilbert for the promotion because Gilbert had a low search committee score and inferior

qualifications when compared to the four finalists.  <u>Id.</u> at 914.  Although Gilbert had similar a

education to the four finalists, he did not have experience as a community college president

while the four finalists were already either sitting or acting interim presidents of other schools.

<u>Id.</u>  In finding that Gilbert was unable to rebut DMACC's legitimate, nondiscriminatory reason

for not interviewing Gilbert, the court noted that "[e]vidence of similar qualifications between

Gilbert and the selected candidates is insufficient to support a finding of pretext; rather, Gilbert

must show the finalists were less qualified than he."  <u>Id.</u> at 916.  The court concluded that

summary judgment in favor of DMACC was proper because, at best, Gilbert had qualifications

that "were somewhat similar to those of the finalists, which is insufficient to rebut DMACC's

legitimate reason for not selecting Gilbert."  <u>Id.</u>

The analysis in <u>Gilbert</u> is applicable to the facts here.  Up to three hiring decisions were

made after Bevill's protected activity status began on May 18, 2007;[11] and, in every instance,

Home Depot hired individuals with equal or better qualifications than Bevill.  The first interview

---

[11] While it is certain that two promotion decisions occurred after Bevill's protected activity, it is conceivable that a third promotion decision was also made.  In the first week of May 2007, Bevill interviewed for an ASM position at the Urbandale, Iowa, Home Depot store with Ryan.  Ryan selected James McNamar (McNamar), who started in the new position on Monday, May 21, 2007.  Therefore, it is possible that the promotion decision was made after Bevill's deposition testimony on May 18 and before McNamar began working in the new position on May 21.

was in May 2007 for an ASM position at the Urbandale, Iowa, Home Depot store.  Ryan selected James McNamar (McNamar) over Bevill because McNamar interviewed better and had more experience than Bevill.  Ryan noted that "[McNamar] interviewed well . . . gave specifics, gave great examples. . . . [McNamar] had great experience from the West Des Moines store in handling situations with installs and specialty matters, so he was well-suited for the job. . . .  He came from a higher-volume store, so he was much further along."  Def. App. 162-63.  Next, Bevill interviewed in May 2007 for an HRM position at the West Des Moines, Iowa, Home Depot store.  Nick Malcom (Malcom), who was hired over Bevill, had experience both as a human resources intern for a hospital and then as the human resource director for a healthcare center.  The final interview was in October 2007 for an hourly human resources supervisor position (HRS) at the Ankeny, Iowa, Home Depot store.  McLaughlin selected Georgia Wright (Wright) because Wright "was an ADS, which was a – very similar to an HR before we received store HRs . . . before the human resource program came to Home Depot, for the store HRs it was called ADS.  Very similar in what they did, so she had a lot of previous experience."  Def. App. 143.

    Bevill claims that Home Depot's stated reason is merely a pretext and that he was actually more qualified than the individuals selected.  Viewing the evidence in the light most favorable to Bevill, the record shows Bevill had some experience overseeing employees while he was a regional manager for application sales of programmable message displays at Struthers-Dunn.  Thus, Bevill, like Gilbert, had at best comparable experience to his competitors.  As the court recited in Gilbert, "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."  Gilbert, 495 F.3d at 916 (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)).  Here, as in Gilbert, because Bevill cannot show that Home Depot

hired a less qualified candidate than him, he cannot show that Home Depot's stated reason was merely a pretext for retaliating against him.  See id.; Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004) (noting that in order to support a claim of pretext, a discrimination claimant must show that the employer hired a *less* qualified candidate).

Bevill has not provided the Court any admissible evidence showing that Home Depot's decision not to promote him was dishonest.  "'[A]n employee's attempt to prove pretext . . . requires more substantial evidence [than it takes to make a prima facie case], . . . because unlike evidence establishing a prima facie case, evidence of pretext . . . [and retaliation] is viewed in light of the employer's justification.'"  Logan, 416 F.3d at 881 (quoting Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002)).  Therefore, even if Bevill had shown a prima facie case of retaliation, which he did not, Home Depot proffered two legitimate, nondiscriminatory reasons for its hiring decisions, which Bevill was unable to show were merely pretextual.

## III.   CONCLUSION

Home Depot's Motion for Summary Judgment (Clerk's No. 13) must be **granted**.  The case is dismissed, and the Clerk of Court is directed to enter judgment for the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

Dated this 30th day of December, 2009.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT